IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ROBERT V. WEST, III | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 5:13-CV-24 |
| | § | |
| VELO ENTERPRISE CO., LTD. | § | |
| and VELO EUROPE SLR | § | |
| | § | |
| Defendants. | § | |

## COMPLAINT

Plaintiff, Robert V. West, III, files this Complaint against Defendants, Velo Enterprise Co., Ltd. and Velo Europe SLR, seeking injunctive relief and damages to redress the injuries Plaintiff has suffered and continues to suffer as a result of Defendants' unlawful actions comprising trademark infringement and counterfeiting, trade dress infringement, and false designation of origin and unfair competition in violation of the federal Lanham Act, 15 U.S.C. §§ 1051 et seq., and trade dress infringement, palming off, misappropriation of trade secrets, unfair competition, deceptive trade practices, breach of confidentiality, breach of fiduciary duty, and breach of contract under state law. For his Complaint, Plaintiff states as follows:

## PARTIES

1.     Plaintiff Robert V. West, III (hereinafter "Plaintiff") is an individual who is a citizen of the State of Texas and resides in San Antonio, Texas.

1.     Defendant Velo Enterprise Co., Ltd. (hereinafter "Velo Enterprise") is a corporation incorporated under the laws of Taiwan with its principal place of business located at No. 1012, Sec. 1, Chung Shan Rd., Tachia Taichunghsien, Taiwan, R.O.C. Velo Enterprise engages in business in the State of Texas and throughout the United States but does not maintain

a regular place of business or a designated agent for service of process in this state or any other state. Because this suit arises out of Velo Enterprise's doing business in this state, Velo Enterprise may be served with process by serving the Texas Secretary of State, Esperanza "Hope" Andrade, as its agent for service, at Secretary of State, Citations Unit, P.O. Box 12079, Austin, TX 78711-2079, Travis County, Texas for delivery to Velo Enterprise Co., Ltd. at No. 1012, Sec. 1, Chung Shan Rd., Tachia Taichunghsien, Taiwan, R.O.C. *See* Tex. Civ. Prac. & Rem. Code §§ 17.041–.045.

2.      Defendant Velo Europe SRL (hereinafter "Velo Europe") is a corporation incorporated under the laws of Italy with its principal place of business located at Via Dei Chiosi 11, Cavenago Brianza, Milano, Italy 20040. Velo Europe engages in business in the State of Texas and throughout the United States but does not maintain a regular place of business or a designated agent for service of process in this state or any other state. Because this suit arises out of Velo Europe's doing business in this state, Velo Europe may be served with process by serving the Texas Secretary of State, Esperanza "Hope" Andrade, as its agent for service, at Secretary of State, Citations Unit, P.O. Box 12079, Austin, TX 78711-2079, Travis County, Texas for delivery to Velo Europe, SRL at Via Dei Chiosi 11, Cavenago Brianza, Milano, Italy 20040. *See* Tex. Civ. Prac. & Rem. Code §§ 17.041–.045.

## JURISDICTION AND VENUE

3.      This Court's subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1331, as a matter arising under the laws of the United States; 28 U.S.C. § 1332(a), as a matter between citizens of different states with the amount in controversy exceeding $75,000; 28 U.S.C. § 1338(a), as a civil action arising under an Act of Congress pertaining to trademarks; 28 U.S.C. § 1338(b), as a related claim of unfair competition; and provisions of the Lanham Act under 15

U.S.C. §§ 1116 and 1121. This Court has supplemental jurisdiction over Plaintiff's asserted state law claims, pursuant to 28 U.S.C. § 1367(a), because they arise out of facts identical to those that form the basis for Plaintiff's federal claims.

4.      This Court has personal jurisdiction over the Defendants pursuant to Texas Civil Practice and Remedies Code §17.042, the Texas Long Arm Statute, because each of them has continuously and systematically transacted business in the State of Texas and the Western District of Texas, maintained a general presence in the State of Texas and the Western District of Texas through sales and advertising of the infringing products at issue in this action, committed and caused tortious conduct and harm to occur in the State of Texas and the Western District of Texas, and established minimum contacts with the forum, for which the exercise of personal jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice. *See* Tex. Civ. Prac. & Rem. Code §§ 17.041–.045; *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 166–69 (Tex. 2007); *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 332 S.W.3d 1, 8–10 (Tex. App.—Fort Worth 2010, pet. granted).

5.      Defendant Velo Europe is a wholly owned subsidiary of Defendant Velo Enterprise.

6.      Defendants manufacture the infringing products at issue in this action and market and sell them worldwide, including within the State of Texas and throughout the United States.

7.      Defendants operate an interactive website, www.velosaddles.com, and through this website market and sell the infringing products at issue in this action worldwide, including within the State of Texas and throughout the United States.

8.      Defendants actively promote the infringing products at issue in this action worldwide, including within the State of Texas and throughout the United States, through their

distributors, direct advertising, and sponsorships of professional bicyclists, racing teams, bicycle teams, and bicycle events.

9.     Defendants currently have over 5000 bike dealers in the United States and over twenty retail bicycle shop dealers within the State of Texas, including several in the Western District of Texas, and Defendants market and sell the infringing products at issue in this action through these retail dealers.

10.    Defendants provide their retail bicycle shop dealers and others with printed catalogs, online catalogs, and interactive Internet websites that list, depict, offer for sale, and allow for the ordering of the infringing products at issue in this action and other products.

11.    Defendants have regular and systematic sales of the infringing products at issue in this action and other products to retail bicycle shop dealers in the State of Texas and in the Western District of Texas.

12.    Defendants' brands include Velo, End Zone, Velo plus design, V design, GelTech, Prologo, Velod Senso, Plush, O design, Attune, and Wrap, most of which are registered trademarks with the United States Patent and Trademark Office ("USPTO").

13.    Defendants do business in the United States through such distributors as Quality Bicycles Products and Security Bicycles Accessories, who operate interactive Internet websites at www.qbp.com and www.securitybicycle.com, as well as Allius BMX Co., CaliStili Bikes Gear, and Michael A. Fritz & Associates, Inc.

14.    Defendant Velo Enterprise claims to have over 30 years of experience selling bicycle saddles and to be one of the world's leading designers and manufacturers of quality saddles, grips, and handlebar tapes, advertising that, "For 15 million cyclists a year, one brand just feels right!"

15.     Defendant Velo Enterprise owns and operates two manufacturing facilities in Taiwan and another two in China, which supply high-quality saddles and accessories to clients all around the world.

16.     Defendants' retail dealers in the Western District of Texas include:

a)  OZONE BIKE DEPARTMENT – 3202 Guadalupe, Austin, TX 78705, Telephone: (512) 302-1164;

b)  PURE AUSTIN – 907 W. 5th St., Austin, TX 78703, Telephone: (512) 474-1800;

c)  BICYCLE HEAVEN – 20323 Huebner Road Suite 108, San Antonio, TX 78258, Telephone: (210) 494-0035;

d)  AJ'S CYCLERY – Alexa Jade Enterprises, LLC, Austin, TX 78717, Telephone: (512) 351-3179;

e)  GOTTA RIDE BIKES – IH-10 West #5 28604, Boerne, TX 78006, Telephone: (830) 755-8039;

f)  BICYCLE HEAVEN – N.W. Military Hwy., Suite 121 1931, San Antonio, TX 78213, Telephone: (210) 342-2453;

g)  TEXAS CYCLESPORT – Farrell Road Suite A 101, Dripping Springs, TX 78620, Telephone: (512) 264-2771;

h)  MELLOW JOHNNY'S, LLC – Nueces 400, Austin, TX 78701, Telephone: (512) 473-0222;

i)  PURE AUSTIN – 5th St., Suite 201 907 W, Austin, TX 78703, Telephone: (512) 474-1800;

j)  AUSTINBIKES – 5th St. 1213 # A, Austin, TX 78703, Telephone: (512) 468-9557;

k)  JACK & ADAMS – Barton Springs Rd 1210, Austin, TX 78704, Telephone: (512) 472-5646;

l)  NELO'S CYCLES – Mesa Drive 8108, 78759, Austin, TX, Telephone: (512) 338-0505;

m) BIKE WORLD – 5911 Broadway, San Antonio, TX 78209, Telephone: (210) 828-5558.

17.     These retail bicycle shop dealers in the State of Texas have purchased the

infringing products at issue in this action from Defendants, or the wholesale distributors for Defendants, and have subsequently sold the same infringing products to retail customers in the State of Texas and in the Western District of Texas.

18.     Venue is proper in the Western District of Texas, pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendants are subject to personal jurisdiction in the Western District of Texas. The parties also entered into an agreement in 2009 that includes a forum selection clause to resolve disputes in Plaintiff's jurisdiction, Bexar County, Texas.

## BACKGROUND



19.     The characteristic, ornamental feature of Plaintiff's bicycle saddle design at issue in this case consists of an arbitrary and distinctive "arrowhead"-shaped cut-out from the seat's midsection towards the narrow tip at the front of the seat (hereinafter "Arrowhead Trade Dress"). The pictures above provide representative examples of Plaintiff's Arrowhead Trade Dress.

20.     Since about 1989, Plaintiff and his predecessors and licensees have exclusively and continuously marketed and sold bicycle saddles using the Arrowhead Trade Dress worldwide, including within the State of Texas and throughout the United States.

21.     Plaintiff's Arrowhead Trade Dress has long been and continues to be distinctive of Plaintiff's bicycle saddles. Likewise, the Arrowhead Trade Dress has secondary meaning. As a result, Plaintiff has acquired trademark rights in the Arrowhead Trade Dress for bicycle saddles.

22.     Plaintiff has a valid and enforceable registration for the Arrowhead Trade Dress with the USPTO under U.S. Trademark Registration No. 3,168,038 in International Class 12, filed October 18, 2005, registered November 7, 2006, for bicycle seats, namely, saddles. Attached as Exhibit A is a copy of this incontestable trademark registration.

23.     Since 2003, Plaintiff has operated an interactive website, www.aerosaddles.com, to market and sell bicycle saddles using the Arrowhead Trade Dress through his business to consumers in the State of Texas and throughout the Unites States.

24.     Several years ago, Plaintiff searched for a new manufacturer to partner with for the purpose of making, marketing, and selling his Arrowhead bicycle saddles.

25.     Defendant Velo Enterprise is a Taiwanese manufacturer of bicycle accessories, including bicycle saddles, and is the parent company of Defendant Velo Europe, both of which market, sell, and distribute Defendants' products worldwide, including in Texas and throughout the United States.

26.     In 2009, Plaintiff began negotiating with Defendants to establish a joint venture for the design, manufacturing, and marketing of bicycle saddles that would use Plaintiff's trademarks, including his Arrowhead Trade Dress, in conjunction with his proprietary and confidential Arrowhead Bicycle System technology (i.e., Plaintiff's trade secrets).

27.     On October 16, 2009, Plaintiff and Defendants entered into a NON-DISCLOSURE / NON-COMPETE AGREEMENT AND LETTER OF INTENT (the "2009 Agreement").

28.     The 2009 Agreement provided that "[t]he parties hereby agree to enter into this Agreement with intent to develop, design, manufacture, license, promote, and market the above referenced Arrowhead Bicycle Saddles fashioned according to Velo specifications party's

specifications and branded with both party's exclusive trademarks."

29.     In the 2009 Agreement, Defendants expressly acknowledged Plaintiff's "proprietary rights to both trade secrets regarding the product and his intellectual property rights appurtenant to the Arrowhead System" and agreed "to receive such information and any accompanying materials in strict confidence, protect [Plaintiff's] technology from use by third parties competitors, and not to use, nor disclose to others, such information or materials without written permission from [Plaintiff]."

30.     In the 2009 Agreement, the parties agreed "to negotiate in good faith towards a joint venture to produce the Arrowhead Bicycle System using their combined expertise, technologies, and market share," and that Defendants would return all "trade secrets" if no such agreement was reached.

31.     In the 2009 Agreement, Defendants also expressly acknowledged Plaintiff's numerous trade secrets regarding the manufacture and design of bicycle saddles, and expressly acknowledged Plaintiff's trademark rights pertaining to his Arrowhead bicycle saddles, and Defendants agreed that "no attempt will be made by [Defendants] to design around or copy in any way [Plaintiff's] designs now or in the future, without the written permission of [Plaintiff]" and agreed to protect, respect, and not abuse or infringe Plaintiff's trademark rights.

32.     On June 21, 2012, Plaintiff entered into a Tooling Agreement with Defendant Velo Enterprise to manufacture Arrowhead bicycle saddles for Plaintiff using Plaintiff's Arrowhead Trade Dress and trade secrets.

33.     At that time, Plaintiff did not know that Defendants had already decided to breach the 2009 Agreement and go into competition with Plaintiff using Plaintiff's Arrowhead Trade Dress and trade secrets.

8



34.    Soon thereafter, Plaintiff discovered that Defendants were already manufacturing, marketing, and selling bicycle saddles using Plaintiff's Arrowhead Trade Dress and trade secrets without Plaintiff's knowledge, permission, or participation. The picture above provides a representative example of Defendants' bicycle saddles that are wrongfully using Plaintiff's Arrowhead Trade Dress and trade secrets.

35.    Defendants' current catalogs show that Defendants have copied Plaintiff's Arrowhead Trade Dress and are using Plaintiff's trade secrets and are selling saddles incorporating Plaintiff's Arrowhead Trade Dress and trade secrets.

36.    Although Defendants agreed and understood that they would have no rights to use Plaintiff's Arrowhead Trade Dress and trade secrets beyond the scope of the parties' contemplated joint venture, Defendants have intentionally and with complete disregard of Plaintiff's rights manufactured bicycle saddles using Plaintiff's Arrowhead Trade Dress and trade secrets and marketed those saddles using the Arrowhead Trade Dress in their websites, catalogs, and other electronic and printed materials.

37.    Defendants have and continue to market, offer for sale, sell, and distribute bicycle saddles using Plaintiff's Arrowhead Trade Dress and trade secrets all around the world, including

in the State of Texas and throughout the United States, primarily through interactive Internet websites.

38.     The websites of Defendants and their dealers and distributors provide online ordering systems, which display pictures and descriptions of bicycle products, including saddles using Plaintiff's Arrowhead Trade Dress.

39.     Defendants' website, www.velosaddles.com, also provides a publicly accessible catalog with pictures and descriptions of bicycle products, including saddles using Plaintiff's Arrowhead Trade Dress.

40.     Defendants provide third party dealers with other electronic and printed matter that these dealers use to provide consumers with the same or similar electronic and printed matter that display pictures and descriptions of bicycle products, including saddles using Plaintiff's Arrowhead Trade Dress.

41.     Due to the intentional, knowing, and willful actions of Defendants, bicycle saddles using Plaintiff's Arrowhead Trade Dress flow in the stream of commerce to be marketed and sold to consumers by third party dealers worldwide, including within the State of Texas and throughout the United States.

42.     In turn, third party dealers of Defendants intentionally, knowingly, and willfully market, advertise, offer for sale, and sell bicycle saddles to consumers using Plaintiff's Arrowhead Trade Dress.

43.     Defendants' acts, as described above, have and continue to be intentional, knowing, and willful without the authority or consent of Plaintiff and in complete disregard and violation of Plaintiff's rights.

44.     Defendants' actions were intended to deceive and did deceive the public, and

were and are done with the fraudulent purpose to palm off and substitute an article not of Plaintiff's origin as Plaintiff's product and to fraudulently divert and secure to Defendants the profits arising from Plaintiff's good will and Arrowhead Trade Dress, which the public has come to associate exclusively with the bicycle saddles invented, designed, and sold by Plaintiff.

45.     Defendants have derived substantial profits and have been unjustly enriched at the expense of Plaintiff, in an amount and in a sum that is currently unknown to Plaintiff.

46.     Defendants have also caused Plaintiff to suffer significant damage to his business, reputation, good will, and profits in a total amount yet to be determined.

47.     Defendants are further causing and will continue to cause serious and irreparable injury to Plaintiff's business, reputation, good will, and profits unless restrained and enjoined by this Court. For this reason, Plaintiff has no adequate remedy at law.

## COUNT I

## FEDERAL TRADEMARK INFRINGEMENT AND COUNTERFEITING

48.     Plaintiff incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

49.     Defendants have intentionally, knowingly, and willfully used in commerce reproductions, counterfeits, copies, or colorable imitations of Plaintiff's federally-registered Arrowhead Trade Dress in connection with the sale, offering for sale, distribution, and advertising of goods, without Plaintiff's consent, which is likely to cause confusion, or to cause mistake, or to deceive.

50.     Defendants have intentionally, knowingly, and willfully reproduced, counterfeited, copied, or colorably imitated Plaintiff's federally-registered Arrowhead Trade Dress and applied such reproductions, counterfeits, copies, or colorable imitations to goods,

11

packages, wrappers, tags, labels, receptacles, invoices, catalogs, signs, banners, prints, advertisements, promotional materials, websites, online ordering systems, and other electronic or printed matter intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods, without Plaintiff's consent, which is likely to cause confusion, or to cause mistake, or to deceive.

51.     Defendants have committed these acts with knowledge that such imitations are intended to be used to cause confusion, or to cause mistake, or to deceive.

52.     Accordingly, Defendants have committed trademark infringement and counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114(1).

53.     Defendants' intentional, knowing, and willful acts of trademark infringement and counterfeiting have caused and continue to cause loss of goodwill and profits to Plaintiff, damage to the reputation of Plaintiff and Plaintiff's Arrowhead Trade Dress, unlawful diversion of sales and unjust enrichment of Defendants at the expense of Plaintiff, and injury to consumers due to confusion, mistake, and deception in the market for bicycle products.

54.     Pursuant to 15 U.S.C. § 1116(a) and (d), Defendants' acts of trademark infringement and counterfeiting entitle Plaintiff to preliminary and permanent injunctive relief to prevent Defendants' further and continuing violations of the Lanham Act, including the seizure of Defendants' goods and counterfeit marks involved in such violations, the means of making such marks, and records documenting the manufacture, sale, or receipt of things involved in such violations.

55.     Pursuant to 15 U.S.C. § 1117(a), Defendants' acts of trademark infringement and counterfeiting entitle Plaintiff to recover Defendants' profits, any damages sustained by Plaintiff, and the costs of this action. Furthermore, Defendants' willful conduct makes this

action an exceptional case that entitles Plaintiff to three times the actual damages and an award of reasonable attorney fees.

56.     Pursuant to 15 U.S.C. § 1117(b), Defendants' intentional and knowing use of counterfeit marks in connection with the sale, offering for sale, or distribution of goods entitle Plaintiff to recover three times the Defendants' profits or Plaintiff's damages, whichever is greater, together with a reasonable attorney's fee, and prejudgment interest on that amount.

57.     Pursuant to 15 U.S.C. § 1117(c), Defendants' use of counterfeit marks in connection with the sale, offering for sale, or distribution of goods entitle Plaintiff to elect to recover, instead of actual damages and profits, an award of statutory damages in the amount of $1000 to $200,000 per counterfeit mark per type of goods, or if the use is found to be willful, up to $2,000,000 per counterfeit mark per type of goods.

58.     Pursuant to 15 U.S.C. § 1118, Defendants' acts of trademark infringement and counterfeiting entitle Plaintiff to a Court order that all labels, signs, prints, packages, wrappers, receptacles, and advertisements in the possession of Defendants, bearing any reproduction, counterfeit, copy, or colorable imitation of Plaintiff's registered Arrowhead Trade Dress, and all plates, molds, matrices, and other means of making the same, shall be delivered up and destroyed.

59.     Plaintiff lacks an adequate remedy at law and will suffer immediate and irreparable harm unless Defendants are enjoined from infringing Plaintiff's Arrowhead Trade Dress.

## COUNT II

## FEDERAL CONTRIBUTORY TRADEMARK INFRINGEMENT AND COUNTERFEITING

60.     Plaintiff incorporates by reference each and every allegation in the preceding

paragraphs as if fully set forth herein.

61.     Defendants have intentionally induced, or with knowledge or reason to know of the resulting infringement continued to supply, third party dealers of bicycle products to use in commerce reproductions, counterfeits, copies, or colorable imitations of Plaintiff's Arrowhead Trade Dress in connection with the sale, offering for sale, distribution, and advertising of goods, without Plaintiff's consent, which is likely to cause confusion, or to cause mistake, or to deceive.

62.     Defendants have intentionally induced, or with knowledge or reason to know of the resulting infringement continued to supply, third party dealers of bicycle products to reproduce, counterfeit, copy, or colorably imitate Plaintiff's federally-registered Arrowhead Trade Dress and apply such reproductions, counterfeits, copies, or colorable imitations to packages, wrappers, tags, labels, receptacles, invoices, catalogs, signs, banners, prints, advertisements, promotional materials, websites, and other electronic or printed matter intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods, without Plaintiff's consent, which is likely to cause confusion, or to cause mistake, or to deceive.

63.     Defendants have committed these acts with knowledge that such imitations are intended to be used to cause confusion, or to cause mistake, or to deceive.

64.     Accordingly, Defendants are contributorily responsible for their third party dealers' trademark infringement and counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114(1).

65.     Defendants' intentional, knowing, and willful acts of contributory trademark infringement and counterfeiting have and continue to cause loss of goodwill and profits to Plaintiff, damage to the reputation of Plaintiff and Plaintiff's Arrowhead Trade Dress, unlawful

14

diversion of sales and unjust enrichment of Defendants at the expense of Plaintiff, and injury to consumers due to confusion, mistake, and deception in the market for bicycle products.

66.     Pursuant to 15 U.S.C. § 1116(a) and (d), Defendants' acts of contributory trademark infringement and counterfeiting entitle Plaintiff to preliminary and permanent injunctive relief to prevent Defendants' further and continuing violations of the Lanham Act, including the seizure of Defendants' goods and counterfeit marks involved in such violations, the means of making such marks, and records documenting the manufacture, sale, or receipt of things involved in such violations.

67.     Pursuant to 15 U.S.C. § 1117(a), Defendants' acts of contributory trademark infringement and counterfeiting entitle Plaintiff to recover Defendants' profits, any damages sustained by Plaintiff, and the costs of this action. Furthermore, Defendants' willful conduct makes this action an exceptional case that entitles Plaintiff to three times the actual damages and an award of reasonable attorney fees.

68.     Pursuant to 15 U.S.C. § 1117(b), Defendants' intentional and knowing use of counterfeit marks in connection with the sale, offering for sale, or distribution of goods entitle Plaintiff to recover three times the Defendants' profits or Plaintiff's damages, whichever is greater, together with a reasonable attorney's fee, and prejudgment interest on that amount.

69.     Pursuant to 15 U.S.C. § 1117(c), Defendants' use of counterfeit marks in connection with the sale, offering for sale, or distribution of goods entitle Plaintiff to elect to recover, instead of actual damages and profits, an award of statutory damages in the amount of $1000 to $200,000 per counterfeit mark per type of goods, or if the use is found to be willful, up to $2,000,000 per counterfeit mark per type of goods.

70.     Pursuant to 15 U.S.C. § 1118, Defendants' acts of contributory trademark

infringement and counterfeiting entitle Plaintiff to a Court order that all labels, signs, prints, packages, wrappers, receptacles, and advertisements in the possession of Defendants, bearing any reproduction, counterfeit, copy, or colorable imitation of Plaintiff's Arrowhead Trade Dress, and all plates, molds, matrices, and other means of making the same, shall be delivered up and destroyed.

71.     Plaintiff lacks an adequate remedy at law and will suffer immediate and irreparable harm unless Defendants are enjoined from contributorily infringing Plaintiff's Arrowhead Trade Dress.

## COUNT III

## FEDERAL TRADE DRESS INFRINGEMENT

72.     Plaintiff incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

73.     Defendants have intentionally, knowingly, and willfully used in commerce designs, symbols, or devices identical or similar to Plaintiff's common law Arrowhead Trade Dress in connection with the sale, offering for sale, distribution, and advertising of goods, without Plaintiff's consent, which is likely to cause confusion, or to cause mistake, or to deceive.

74.     Defendants have intentionally, knowingly, and willfully applied designs, symbols, or devices identical or similar to Plaintiff's common law Arrowhead Trade Dress to goods, packages, wrappers, tags, labels, receptacles, invoices, catalogs, signs, banners, prints, advertisements, promotional materials, websites, online ordering systems, and other electronic or printed matter intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods, without Plaintiff's consent, which is

likely to cause confusion, or to cause mistake, or to deceive.

75.     Accordingly, Defendants have committed trade dress infringement in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).

76.     Defendants' intentional, knowing, and willful acts of trade dress infringement have caused and continue to cause loss of goodwill and profits to Plaintiff, damage to the reputation of Plaintiff and Plaintiff's Arrowhead Trade Dress, unlawful diversion of sales and unjust enrichment of Defendants at the expense of Plaintiff, and injury to consumers due to confusion, mistake, and deception in the market for bicycle products.

77.     Pursuant to 15 U.S.C. § 1116(a), Defendants' acts of trade dress infringement entitle Plaintiff to preliminary and permanent injunctive relief to prevent Defendants' further and continuing violations of the Lanham Act.

78.     Pursuant to 15 U.S.C. § 1117(a), Defendants' acts of trade dress infringement entitle Plaintiff to recover Defendants' profits, any damages sustained by Plaintiff, and the costs of this action. Furthermore, Defendants' willful conduct makes this action an exceptional case that entitles Plaintiff to three times the actual damages and an award of reasonable attorney fees.

79.     Pursuant to 15 U.S.C. § 1118, Defendants' acts of trade dress infringement entitle Plaintiff to a Court order that all labels, signs, prints, packages, wrappers, receptacles, and advertisements in the possession of Defendants, bearing any designs, symbols, devices, reproductions, counterfeits, copies, or colorable imitations identical or similar to Plaintiff's common law Arrowhead Trade Dress, and all plates, molds, matrices, and other means of making the same, shall be delivered up and destroyed.

80.     Plaintiff lacks an adequate remedy at law and will suffer immediate and irreparable harm unless Defendants are enjoined from infringing Plaintiff's Arrowhead Trade

17

Dress.

## COUNT IV

## FEDERAL CONTRIBUTORY TRADE DRESS INFRINGEMENT

81.     Plaintiff incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

82.     Defendants have intentionally induced, or with knowledge or reason to know of the resulting infringement continued to supply, third party dealers of bicycle products to use in commerce designs, symbols, or devices identical or similar to Plaintiff's common law Arrowhead Trade Dress in connection with the sale, offering for sale, distribution, and advertising of goods, without Plaintiff's consent, which is likely to cause confusion, or to cause mistake, or to deceive.

83.     Defendants have intentionally induced, or with knowledge or reason to know of the resulting infringement continued to supply, third party dealers of bicycle products to apply designs, symbols, or devices identical or similar to Plaintiff's common law Arrowhead Trade Dress to goods, packages, wrappers, tags, labels, receptacles, invoices, catalogs, signs, banners, prints, advertisements, promotional materials, websites, online ordering systems, and other electronic or printed matter intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods, without Plaintiff's consent, which is likely to cause confusion, or to cause mistake, or to deceive.

84.     Accordingly, Defendants are contributorily responsible for their third party dealers' trade dress infringement in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).

85.     Defendants' intentional, knowing, and willful acts of contributory trade dress

infringement have caused and continue to cause loss of goodwill and profits to Plaintiff, damage to the reputation of Plaintiff and Plaintiff's Arrowhead Trade Dress, unlawful diversion of sales and unjust enrichment of Defendants at the expense of Plaintiff, and injury to consumers due to confusion, mistake, and deception in the market for bicycle products.

86.     Pursuant to 15 U.S.C. § 1116(a), Defendants' acts of contributory trade dress infringement entitle Plaintiff to preliminary and permanent injunctive relief to prevent Defendants' further and continuing violations of the Lanham Act.

87.     Pursuant to 15 U.S.C. § 1117(a), Defendants' acts of contributory trade dress infringement entitle Plaintiff to recover Defendants' profits, any damages sustained by Plaintiff, and the costs of this action. Furthermore, Defendants' willful conduct makes this action an exceptional case that entitles Plaintiff to three times the actual damages and an award of reasonable attorney fees.

88.     Pursuant to 15 U.S.C. § 1118, Defendants' acts of contributory trade dress infringement entitle Plaintiff to a Court order that all labels, signs, prints, packages, wrappers, receptacles, and advertisements in the possession of Defendants, bearing any designs, symbols, devices, reproductions, counterfeits, copies, or colorable imitations identical or similar to Plaintiff's common law Arrowhead Trade Dress, and all plates, molds, matrices, and other means of making the same, shall be delivered up and destroyed.

89.     Plaintiff lacks an adequate remedy at law and will suffer immediate and irreparable harm unless Defendants are enjoined from contributorily infringing Plaintiff's Arrowhead Trade Dress.

## COUNT V

## FEDERAL FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION

90.     Plaintiff incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

91.     Defendants have intentionally, knowingly, and willfully used in commerce words, terms, names, symbols, and devices identical or similar to Plaintiff's federally-registered and common law Arrowhead Trade Dress in connection with Defendants' goods and services such that they falsely identify Plaintiff's affiliation, connection, association, origin, sponsorship, or approval of those goods and services.

92.     These acts of Defendants have been done with the intent and likelihood to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities by Plaintiff.

93.     Accordingly, Defendants have committed false designation of origin and unfair competition in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).

94.     Defendants' intentional, knowing, and willful acts of false designation of origin and unfair competition have caused and continue to cause loss of goodwill and profits to Plaintiff, damage to the reputation of Plaintiff and Plaintiff's Arrowhead Trade Dress, unlawful diversion of sales and unjust enrichment of Defendants at the expense of Plaintiff, and injury to consumers due to confusion, mistake, and deception in the market for bicycle products.

95.     Pursuant to 15 U.S.C. § 1116(a), Defendants' acts of false designation of origin and unfair competition entitle Plaintiff to preliminary and permanent injunctive relief to prevent Defendants' further and continuing violations of the Lanham Act.

20

96.     Pursuant to 15 U.S.C. § 1117(a), Defendants' acts of false designation of origin and unfair competition entitle Plaintiff to recover Defendants' profits, any damages sustained by Plaintiff, and the costs of this action. Furthermore, Defendants' willful conduct makes this action an exceptional case that entitles Plaintiff to three times the actual damages and an award of reasonable attorney fees.

97.     Pursuant to 15 U.S.C. § 1118, Defendants' acts of false designation of origin and unfair competition entitle Plaintiff to a Court order that all labels, signs, prints, packages, wrappers, receptacles, and advertisements in the possession of Defendants, bearing any words, terms, names, symbols, devices, and false designations of origin identical or similar to Plaintiff's Arrowhead Trade Dress, and all plates, molds, matrices, and other means of making the same, shall be delivered up and destroyed.

98.     Plaintiff lacks an adequate remedy at law and will suffer immediate and irreparable harm unless Defendants are enjoined from using Plaintiff' Arrowhead Trade Dress to falsely identify Plaintiff's affiliation, connection, association, origin, sponsorship, or approval of Defendants' goods.

<u>**COUNT VI**</u>

<u>**COMMON LAW TRADE DRESS INFRINGEMENT**</u>

99.     Plaintiff incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

100.    Defendants have intentionally, knowingly, and willfully used in commerce designs, symbols, or devices identical or similar to Plaintiff's common law Arrowhead Trade Dress in connection with the sale, offering for sale, distribution, and advertising of goods, without Plaintiff's consent, which is likely to cause confusion, or to cause mistake, or to

deceive.

101.   Defendants have intentionally, knowingly, and willfully applied designs, symbols, or devices identical or similar to Plaintiff's common law Arrowhead Trade Dress to goods, packages, wrappers, tags, labels, receptacles, invoices, catalogs, signs, banners, prints, advertisements, promotional materials, websites, online ordering systems, and other electronic or printed matter intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods, without Plaintiff's consent, which is likely to cause confusion, or to cause mistake, or to deceive.

102.   Accordingly, Defendants have committed trade dress infringement in violation of the common law of the State of Texas.

103.   Defendants' intentional, knowing, and willful acts of trade dress infringement have caused and continue to cause loss of goodwill and profits to Plaintiff, damage to the reputation of Plaintiff and Plaintiff's Arrowhead Trade Dress, unlawful diversion of sales and unjust enrichment of Defendants at the expense of Plaintiff, and injury to consumers due to confusion, mistake, and deception in the market for bicycle products.

104.   Under the common law of the State of Texas, Defendants' acts of trade dress infringement entitle Plaintiff to preliminary and permanent injunctive relief and damages, including but not limited to actual damages, Defendants' profits resulting from their unlawful conduct, reasonable attorney fees, costs, expenses, and pre- and post-judgment interest.

105.   Plaintiff is also entitled to exemplary damages under Texas Civil Practice & Remedies Code section 41.003(a) because the harm caused by Defendants' acts of trademark infringement resulted from fraud, malice, or gross negligence as defined under Texas statute.

106.   Plaintiff lacks an adequate remedy at law and will suffer immediate and

irreparable harm unless Defendants are enjoined from infringing Plaintiff's Arrowhead Trade Dress.

## COUNT VII

## COMMON LAW CONTRIBUTORY TRADE DRESS INFRINGEMENT

107.    Plaintiff incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

108.    Defendants have intentionally induced, or with knowledge or reason to know of the resulting infringement continued to supply, third party dealers of bicycle products to use in commerce designs, symbols, or devices identical or similar to Plaintiff's common law Arrowhead Trade Dress in connection with the sale, offering for sale, distribution, and advertising of goods, without Plaintiff's consent, which is likely to cause confusion, or to cause mistake, or to deceive.

109.    Defendants have intentionally induced, or with knowledge or reason to know of the resulting infringement continued to supply, third party dealers of bicycle products to apply designs, symbols, or devices identical or similar to Plaintiff's common law Arrowhead Trade Dress to goods, packages, wrappers, tags, labels, receptacles, invoices, catalogs, signs, banners, prints, advertisements, promotional materials, websites, online ordering systems, and other electronic or printed matter intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods, without Plaintiff's consent, which is likely to cause confusion, or to cause mistake, or to deceive.

110.    Accordingly, Defendants have committed contributory trade dress infringement in violation of the common law of the State of Texas.

111.    Defendants' intentional, knowing, and willful acts of contributory trade dress

infringement have caused and continue to cause loss of goodwill and profits to Plaintiff, damage to the reputation of Plaintiff and Plaintiff's Arrowhead Trade Dress, unlawful diversion of sales and unjust enrichment of Defendants at the expense of Plaintiff, and injury to consumers due to confusion, mistake, and deception in the market for bicycle products.

112.    Under the common law of the State of Texas, Defendants acts of contributory trade dress infringement entitle Plaintiff to preliminary and permanent injunctive relief and damages, including but not limited to actual damages, Defendants' profits resulting from their unlawful conduct, reasonable attorney fees, costs, expenses, and pre- and post-judgment interest.

113.    Plaintiff is also entitled to exemplary damages under Texas Civil Practice & Remedies Code section 41.003(a) because the harm caused by Defendants' acts of contributory trademark infringement resulted from fraud, malice, or gross negligence as defined under Texas statute.

114.    Plaintiff lacks an adequate remedy at law and will suffer immediate and irreparable harm unless Defendants are enjoined from contributorily infringing Plaintiff's Arrowhead Trade Dress.

## COUNT VIII

## COMMON LAW PALMING OFF

115.    Plaintiff incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

116.    Defendants have and continue to knowingly, willfully, and in bad faith commit wrongful acts to purposefully simulate Plaintiff's Trade Dress to induce customers to purchase Defendants' goods in the belief that those goods are those of Plaintiff.

117.    The natural and probable result of Defendants' wrongful acts is to likely confuse or deceive the public.

118.    Defendants intended to and did derive a benefit from the reputation and goodwill of Plaintiff and Plaintiff's Arrowhead Trade Dress as a result of their wrongful acts.

119.    Accordingly, Defendants have committed the tort of palming off in violation of the common law of the State of Texas.

120.    Defendants' acts of palming off have caused and continue to cause loss of goodwill and profits to Plaintiff, damage to the reputation Plaintiff and Plaintiff's Arrowhead Trade Dress, unlawful diversion of sales and unjust enrichment of Defendants at the expense of Plaintiff, and injury to consumers due to confusion, mistake, and deception in the market for bicycle products.

121.    Under the common law of the State of Texas, Defendants acts of palming off entitle Plaintiff to preliminary and permanent injunctive relief and damages, including but not limited to actual damages, Defendants' profits resulting from their unlawful conduct, reasonable attorney fees, costs, expenses, and pre- and post-judgment interest.

122.    Plaintiff is also entitled to exemplary damages under Texas Civil Practice & Remedies Code section 41.003(a) because the harm caused by Defendants' acts of palming off resulted from fraud, malice, or gross negligence as defined under Texas statute.

123.    Plaintiff lacks an adequate remedy at law and will suffer immediate and irreparable harm unless Defendants are enjoined from palming off their goods as Plaintiff's goods.

## COUNT IX

## MISAPPROPRIATION OF TRADE SECRETS

124.    Plaintiff incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

125.    Plaintiff is in the business of designing and selling bicycle saddles. Plaintiff has a competitive advantage over others in the same business because Plaintiff has and incorporates proprietary and confidential information and Arrowhead Bicycle System technology (i.e., Plaintiff's trade secrets) in the bicycle saddles that he designs and sells.

126.    Plaintiff's trade secrets are not generally known or readily available to the general public, and Plaintiff has made reasonable efforts to maintain the confidentiality and secrecy of his trade secrets.

127.    Defendants acquired knowledge of Plaintiff's trade secrets through a contractual relationship with Plaintiff that prohibited Defendants from using or disclosing Plaintiff's trade secrets. This contractual relationship was established by non-compete and non-disclosure provisions in the parties' 2009 Agreement.

128.    Defendants violated the 2009 Agreement by using Plaintiff's trade secrets to design, manufacture, and sell bicycle saddles in competition with Plaintiff and without Plaintiff's knowledge, permission, or participation.

129.    Defendants also acquired knowledge of Plaintiff's trade secrets through a relationship of trust with Plaintiff that gave rise to a duty of confidentiality. This relationship of trust was established as part of the parties' contemplated joint venture under which Defendants acted in part as the marketing and sales representatives for Plaintiff.

130.    Defendants violated the duty of confidentiality by using Plaintiff's trade secrets to design, manufacture, and sell bicycle saddles in competition with Plaintiff and without Plaintiff's knowledge, permission, or participation.

26

131.    But for the parties' contractual relationship and relationship of trust, Defendants would not have been able to independently develop the same trade secrets at all, or alternatively would have had to expend substantial time, labor, and money to do so.

132.    Accordingly, Defendants are liable for misappropriation of trade secrets in violation of the common law of the State of Texas.

133.    Defendants have knowingly, intentionally, willfully, and maliciously obtained an unfair advantage in the market for bicycle saddles through their calculated program of misappropriation and breach of known obligations to Plaintiff.

134.    Defendants' use of Plaintiff's trade secrets has caused and is continuing to cause injury to Plaintiff, including but not limited to loss of goodwill and profits to Plaintiff, damage to the reputation of Plaintiff and Plaintiff's Arrowhead Trade Dress, unlawful diversion of sales and unjust enrichment of Defendants at the expense of Plaintiff, and injury to consumers due to confusion, mistake, and deception in the market for bicycle products.

135.    Under the common law of the State of Texas, Defendants' misappropriation of trade secrets entitle Plaintiff to preliminary and permanent injunctive relief and damages, including but not limited to actual damages, Defendants' profits resulting from their unlawful conduct, reasonable attorney fees, costs, expenses, and pre- and post-judgment interest.

136.    Plaintiff is also entitled to exemplary damages under Texas Civil Practice & Remedies Code section 41.003(a) because the harm caused by Defendants' misappropriation of trade secrets resulted from fraud, malice, or gross negligence as defined under Texas statute. This claim is exempt from the statutory cap on exemplary damages under Texas Civil Practice & Remedies Code section 41.008(c) because Plaintiff's injury resulted from Defendants' felony theft in the third degree or higher under the Texas Penal Code.

137.    Plaintiff lacks an adequate remedy at law and will suffer immediate and irreparable harm unless Defendants are enjoined from using and disclosing Plaintiff's trade secrets.

## COUNT X

## COMMON LAW UNFAIR COMPETITION

138.    Plaintiff incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

139.    Defendants' wrongful actions described above are independent torts or otherwise illegal acts that have interfered and continue to interfere with Plaintiff's business.

140.    Defendants' wrongful actions consist of knowing, willful, and bad faith conduct that is contrary to honest business practices in industrial or commercial matters.

141.    Accordingly, Defendants have committed unfair competition in violation of the common law of the State of Texas.

142.    Defendants' acts of unfair competition have caused and continue to cause loss of goodwill and profits to Plaintiff, damage to the reputation of Plaintiff and Plaintiff's Arrowhead Trade Dress, unlawful diversion of sales and unjust enrichment of Defendants at the expense of Plaintiff, and injury to consumers due to confusion, mistake, and deception in the market for bicycle products.

143.    Under the common law of the State of Texas, Defendants acts of unfair competition entitle Plaintiff to preliminary and permanent injunctive relief and damages, including but not limited to actual damages, Defendants' profits resulting from their unlawful conduct, reasonable attorney fees, costs, expenses, and pre- and post-judgment interest.

144.    Plaintiff is also entitled to exemplary damages under Texas Civil Practice &

Remedies Code section 41.003(a) because the harm caused by Defendants' acts of unfair competition resulted from fraud, malice, or gross negligence as defined under Texas statute.

145.    Plaintiff lacks an adequate remedy at law and will suffer immediate and irreparable harm unless Defendants are enjoined from continuing to unfairly compete with Plaintiff.

<b><u>COUNT XI</u></b>

<b><u>DECEPTIVE TRADE PRACTICES</u></b>

146.    Plaintiff incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

147.    Plaintiff is a consumer under the Texas Deceptive Trade Practices Act (hereinafter "DTPA") because Plaintiff is an individual who sought goods by purchase. Specifically, Plaintiff sought to purchase bicycle saddles from Defendants pursuant to their 2012 Tooling Agreement. The design of these bicycle saddles forms the basis of this complaint because they use Plaintiff's Arrowhead Trade Dress and trade secrets.

148.    Defendants are corporations that can be sued under the DTPA.

149.    Defendants violated the DTPA when Defendants engaged in false, misleading, or deceptive acts or practices that Plaintiff relied on to his detriment. Defendants agreed to manufacture and supply Plaintiff with bicycle saddles using Plaintiff's Arrowhead Trade Dress and trade secrets. Plaintiff relied to his detriment on the understanding that Defendants had no right to manufacture, market, and sell their own competing bicycle saddles using Plaintiff's Arrowhead Trade Dress and trade secrets. Defendants' advertising, distribution, and sales of such saddles has resulted in several deceptive trade practices enumerated in the DTPA, including: (1) passing off goods as those of another; (2) causing confusion or misunderstanding

as to the source, sponsorship, or approval of goods; (3) causing confusion or misunderstanding as to affiliation, connection, or association with another; and (4) representing that goods have sponsorship or approval which they do not have or that Defendants have a sponsorship, approval, status, affiliation, or connection which they do not.

150.    Accordingly, Defendants have committed deceptive trade practices in violation of Texas Business & Commerce Code section 17.46.

151.    Plaintiff gave Defendants notice as required by Texas Business & Commerce Code section 17.505(a). Attached as Exhibit B is a copy of the notice letter.

152.    Defendants' wrongful conduct has caused and continues to cause loss of goodwill and profits to Plaintiff, damage to the reputation of Plaintiff and Plaintiff's Arrowhead Trade Dress, unlawful diversion of sales and unjust enrichment of Defendants at the expense of Plaintiff, and injury to consumers due to confusion, mistake, and deception in the market for bicycle products. Plaintiff also seeks reimbursement of his development costs related to the parties' 2012 Tooling Agreement.

153.    Defendants acted knowingly and intentionally, which entitles Plaintiff to recover treble economic damages under Texas Business & Commerce Code section 17.50(b)(1). Alternatively, Plaintiff is entitled to exemplary damages under Texas Civil Practice & Remedies Code section 41.003(a) because the harm caused by Defendants' deceptive trade practices resulted from fraud, malice, or gross negligence as defined under Texas statute.

154.    Defendants' deceptive trade practices also entitle Plaintiff to preliminary and permanent injunctive relief. Plaintiff lacks an adequate remedy at law and will suffer immediate and irreparable harm unless Defendants are enjoined from continuing their deceptive trade practices.

155.    Plaintiff is entitled to recover reasonable and necessary attorney fees for prosecuting this suit under Texas Business & Commerce Code section 17.50(d).

## COUNT XII

## BREACH OF CONFIDENTIALITY

156.    Plaintiff incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

157.    Defendants, through their relationship and position with Plaintiff, occupied a position of trust and confidence.

158.    A duty of confidentiality has existed between Plaintiff and Defendants since the beginning of their relationship as a result of not only their 2009 Agreement but also their contemplated joint venture under which Defendants in part held a position of trust as the marketing and sales representatives for Plaintiff.

159.    This duty of confidentiality precludes Defendants' use and disclosure of Plaintiff's trade secrets without Plaintiff's permission.

160.    Defendants' willful, wanton, and malicious misappropriation of Plaintiff's trade secrets constitutes a breach of Defendants' confidential relationship with Plaintiff.

161.    Defendants' breach has caused and continues to cause loss of goodwill and profits to Plaintiff, damage to the reputation of Plaintiff and Plaintiff's Arrowhead Trade Dress, unlawful diversion of sales and unjust enrichment of Defendants at the expense of Plaintiff, and injury to consumers due to confusion, mistake, and deception in the market for bicycle products.

162.    Under the common law of the State of Texas, Defendants breach of confidentiality entitle Plaintiff to preliminary and permanent injunctive relief and damages, including but not limited to actual damages, Defendants' profits resulting from their unlawful

conduct, reasonable attorney fees, costs, expenses, and pre- and post-judgment interest.

163.    Plaintiff is also entitled to exemplary damages under Texas Civil Practice & Remedies Code section 41.003(a) because the harm caused by Defendants' breach of confidentiality resulted from fraud, malice, or gross negligence as defined under Texas statute.

164.    Plaintiff lacks an adequate remedy at law and will suffer immediate and irreparable harm unless Defendants are enjoined from further using or disclosing Plaintiff's trade secrets and continuing to breach their confidential relationship with Plaintiff.

**COUNT XIII**

**BREACH OF FIDUCIARY DUTY**

165.    Plaintiff incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

166.    Defendants had a fiduciary relationship with Plaintiff. Defendants were a trusted joint venture partner of Plaintiff, to whom Plaintiff entrusted his highly confidential and proprietary information about his trade secrets, product designs, and business dealings.

167.    Defendants and Plaintiff had an agent-principal relationship, under which Plaintiff entrusted Defendants with possession of valuable assets and a nominal control position of developing and marketing Plaintiff's goods.

168.    As part of the parties' contemplated joint venture, Defendants only had a right to use Plaintiff's trade secrets, product designs, and business information with Plaintiff's permission and participation, but Defendants never had any ownership interest at any point in Plaintiff's trade secrets, product designs, and business information.

169.    As a result, Defendants owed Plaintiff a fiduciary duty to protect and not use or disclose Plaintiff's trade secrets, product designs, business information, and related assets for

anyone's benefit other than Plaintiff's.

170.    Defendants willfully, wantonly, and maliciously breached their fiduciary duty by misappropriating and using Plaintiff's trade secrets, product designs, business information, and related assets for their own benefit and to usurp the business opportunities of Plaintiff, at the expense of and to the detriment of Plaintiff, and to gain an unfair competitive advantage over Plaintiff.

171.    Defendants' breach has caused and continues to cause loss of goodwill and profits to Plaintiff, damage to the reputation of Plaintiff and Plaintiff's Arrowhead Trade Dress, unlawful diversion of sales and unjust enrichment of Defendants at the expense of Plaintiff, and injury to consumers due to confusion, mistake, and deception in the market for bicycle products.

172.    Under the common law of the State of Texas, Defendants' breach of fiduciary duty entitles Plaintiff to preliminary and permanent injunctive relief and damages, including but not limited to actual damages, Defendants' profits resulting from their unlawful conduct, reasonable attorney fees, costs, expenses, and pre- and post-judgment interest.

173.    Plaintiff is also entitled to exemplary damages under Texas Civil Practice & Remedies Code section 41.003(a) because the harm caused by Defendants' breach of fiduciary duty resulted from fraud, malice, or gross negligence as defined under Texas statute.

174.    Plaintiff lacks an adequate remedy at law and will suffer immediate and irreparable harm unless Defendants are enjoined from further using or disclosing Plaintiff's trade secrets, product designs, business information, and related assets and continuing to breach their fiduciary duty to Plaintiff. Plaintiff also seeks a return of all items that Defendants have kept in violation of their fiduciary duty.

## COUNT XIV

## BREACH OF CONTRACT

175.    Plaintiff incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

176.    The parties' 2009 Agreement is a valid and enforceable contract. Under this contract, Defendants agreed to protect Plaintiff's trade secrets from use by third party competitors, to not use or disclose Plaintiff's trade secrets without Plaintiff's permission, to not attempt to design around or copy in any way Plaintiff's product designs without Plaintiff's permission, and to protect, respect, and not abuse or infringe Plaintiff's trademark rights.

177.    Plaintiff fully performed his contractual obligations by disclosing his highly confidential and proprietary trade secrets, product designs, and business information as well as negotiating in good faith regarding the parties' contemplated joint venture.

178.    Defendants' intentionally and materially breached the contract by misappropriating and using Plaintiff's trade secrets, product designs, business information, and related assets, including Plaintiff's Arrowhead Trade Dress, to manufacture infringing and competing bicycle saddles without Plaintiff's permission, to directly and indirectly market and sell infringing and competing bicycle saddles, to palm off their goods as Plaintiff's goods, and to usurp the business opportunities of Plaintiff, at the expense of and to the detriment of Plaintiff, and to gain an unfair competitive advantage over Plaintiff.

179.    Defendants' breach has caused and continues to cause loss of goodwill and profits to Plaintiff, damage to the reputation of Plaintiff and Plaintiff's Arrowhead Trade Dress, unlawful diversion of sales and unjust enrichment of Defendants at the expense of Plaintiff, and injury to consumers due to confusion, mistake, and deception in the market for bicycle products.

34

180.    Under the common law of the State of Texas, Defendants' breach of contract entitles Plaintiff to preliminary and permanent injunctive relief and damages, including but not limited to actual damages, Defendants' profits resulting from their unlawful conduct, reasonable attorney fees, costs, expenses, and pre- and post-judgment interest.

181.    Plaintiff is also entitled to exemplary damages under Texas Civil Practice & Remedies Code section 41.003(a) because the harm caused by Defendants' breach of fiduciary duty resulted from fraud, malice, or gross negligence as defined under Texas statute.

182.    Plaintiff lacks an adequate remedy at law and will suffer immediate and irreparable harm unless Defendants are enjoined from further using or disclosing Plaintiff's trade secrets, product designs, business information, and related assets in continued breach of the parties' 2009 Agreement. Plaintiff is entitled to return of all materials that Defendants have kept in violation of the parties' 2009 Agreement. Plaintiff also seeks seizure and forfeiture of all goods Defendants made in violation of the parties' 2009 Agreement to prevent the entry into the market of unauthorized and infringing goods that are likely to be associated with Plaintiff and cause consumers to be confused, deceived, or mistaken.

183.    Pursuant to Texas Civil Practice and Remedies Code chapter 38, Plaintiff is entitled to recover reasonable attorneys' fees because this suit is for breach of a written contract. Plaintiff retained counsel, who presented Plaintiff's claim to Defendants. Defendants failed to tender any payment or other remedy for their breach of the parties' 2009 Agreement within 30 days of when the claim was presented to them.

## NOTICE OF LITIGATION HOLD REQUIREMENT

184.    Defendants are hereby notified that they are legally obligated to locate, preserve, and maintain all records, notes, drawings, documents, data, communications, materials,

electronic recordings, audio/video/photographic recordings, and digital files, including edited and unedited or "raw" source material, and other information and tangible things that Defendants know, or reasonably should know, may be relevant to actual or potential claims, counterclaims, defenses, and/or damages by any party or potential party in this lawsuit, whether created or residing in hard copy form or in the form of electronically stored information (hereinafter collectively referred to as "Potential Evidence").

185.   As used above, the phrase "electronically stored information" includes without limitation: computer files (and file fragments), e-mail (both sent and received, whether internally or externally), information concerning e-mail (including but not limited to logs of e-mail history and usage, header information, and deleted but recoverable e-mails), text files (including drafts, revisions, and active or deleted word processing documents), instant messages, audio recordings and files, video footage and files, audio files, photographic footage and files, spreadsheets, databases, calendars, telephone logs, contact manager information, internet usage files, and all other information created, received, or maintained on any and all electronic and/or digital forms, sources and media, including, without limitation, any and all hard disks, removable media, peripheral computer or electronic storage devices, laptop computers, mobile phones, personal data assistant devices, Blackberry devices, iPhones, Android-based smart phones, Windows-based smart phones, video cameras and still cameras, and any and all other locations where electronic data is stored. These sources may also include any personal electronic, digital, and storage devices of any and all of Defendants' agents or employees if Defendants' electronically stored information resides there.

186.   Defendants are hereby further notified and forewarned that any alteration, destruction, negligent loss, or unavailability, by act or omission, of any Potential Evidence may

result in damages or a legal presumption by the Court and/or jury that the Potential Evidence is not favorable to Defendants' claims and/or defenses. To avoid such a result, Defendants' preservation duties include, but are not limited to, the requirement that Defendants immediately notify their agents and employees to halt and/or supervise the auto-delete functions of Defendants' electronic systems and refrain from deleting Potential Evidence, either manually or through a policy of periodic deletion.

## JURY DEMAND

187.    Plaintiff hereby demands a trial by jury.

## PRAYER

WHEREFORE, Plaintiff prays for judgment in his favor on all counts in the Complaint and requests relief as follows:

A.    Issuance of a preliminary and permanent injunction enjoining Defendants, their officers, agents, employees, servants, attorneys, successors, and assigns, and all those controlled by, acting on behalf of, in privity with, or acting in concert or active participation with Defendants, from:

1.    Infringing in any manner on Plaintiff's Arrowhead Trade Dress, including but not limited to using the Arrowhead Trade Dress, or any design, symbol, or device confusingly similar to the Arrowhead Trade Dress, on any goods, packages, wrappers, tags, labels, receptacles, invoices, catalogs, signs, banners, prints, advertisements, promotional materials, websites, online ordering systems, or other electronic or printed matter;

2.    Directly or indirectly supplying any third parties with goods, packages, wrappers, tags, labels, receptacles, invoices, catalogs, signs, banners, prints,

advertisements, promotional materials, or other electronic or printed matter using the Arrowhead Trade Dress, or any design, symbol, or device confusingly similar to the Arrowhead Trade Dress;

3.      Directly or indirectly inducing or enabling any third parties to infringe in any manner on Plaintiff's Arrowhead Trade Dress, including but not limited to using the Arrowhead Trade Dress, or any design, symbol, or device confusingly similar to the Arrowhead Trade Dress, on any goods, packages, wrappers, tags, labels, receptacles, invoices, catalogs, signs, banners, prints, advertisements, promotional materials, websites, online ordering systems, or other electronic or printed matter;

4.      Directly or indirectly distributing, advertising, marketing, offering for sale, or selling goods in any fashion that would state, imply, or suggest that such goods are themselves Plaintiff's goods or are connected to, associated with, sponsored by, or come from the same source as Plaintiff's Arrowhead Trade Dress;

5.      Directly or indirectly inducing or enabling any third parties to advertise, market, offer for sale, or sell goods in any fashion that would state, imply, or suggest that such goods are themselves Plaintiff's goods or are connected to, associated with, sponsored by, or come from the same source as Plaintiff's Arrowhead Trade Dress;

6.      Palming off or passing off any product as a product of Plaintiff;

7.      Using, disclosing, or otherwise disseminating Plaintiff's trade secrets in any manner, or from offering to do so, or from attempting, causing or assisting anyone else in doing so, or from selling products based on Plaintiff's trade secrets; and

8.      Otherwise unfairly competing with Plaintiff;

B.      A Court order directing Defendants to deliver for impounding during the

pendency of this action, and for destruction thereafter, all products, packages, wrappers, tags, labels, receptacles, invoices, catalogs, signs, banners, prints, advertisements, promotional materials, and other electronic and printed matter using Plaintiff's Arrowhead Trade Dress, or any design, symbol, or device confusingly similar to the Arrowhead Trade Dress, and all plates, proofs, molds, matrixes, and other means of making the same;

C.     A Court order directing Defendants to take any and all actions, including the placement of corrective advertising, to correct any erroneous impression the cycling industry and the public may have derived concerning the source or origin of bicycle saddles using Plaintiff's Arrowhead Trade Dress as a result of their and their third party dealers' marketing, distributing, offering for sale, and selling of bicycle saddles using the Arrowhead Trade Dress, or any designs, symbols, or devices confusingly similar to the Arrowhead Trade Dress;

D.     A Court order directing Defendants to immediately return to Plaintiff any and all documents, drawings, samples, tools, prototypes, materials, equipment, other data compilations of any form containing Plaintiff's trade secrets, and any other property of Plaintiff based on Plaintiff's trade secrets, which are within Defendants' actual or constructive possession or control;

E.     Defendants be adjudged to have breached their contracts with Plaintiff and Plaintiff be awarded the equitable remedy of specific performance in addition to payment of monetary damages;

F.     Defendants be adjudged to have been unjustly enriched, in an amount to be determined by the Court, and Plaintiff be awarded a disgorgement of the amount by which Defendants have been unjustly enriched;

G.     A Court order directing Defendants to provide an accounting of profits derived

39

from their unlawful actions;

H.      An award of damages to Plaintiff from Defendants, in amounts to be determined at trial, paying:

1.      Plaintiff's actual damages and any profits of Defendants resulting from their unlawful actions;

2.      The maximum increase in damages allowed by law for Defendants' unlawful conduct, including but not limited to three times Plaintiff's actual or economic damages;

3.      statutory damages;

4.      exemplary damages;

5.      Plaintiff's reasonable attorney fees;

6.      Plaintiff's costs and expenses; and

7.      Pre-judgment and post-judgment interest;

I.      Any other relief to Plaintiff the Court may deem appropriate to prevent the cycling industry and the public from deriving any erroneous impression concerning the source or origin of bicycle saddles using Plaintiff's Arrowhead Trade Dress; and

J.      Any such other and further relief to Plaintiff the Court may deem just and proper.

Respectfully submitted,

Charles W. Hanor
Bernie Kray
Hanor Law Firm
Charles W. Hanor, P.C.
750 Rittiman Road
San Antonio, Texas 78209
Telephone: (210) 829-2002
Facsimile: (210) 829-2001
chanor@hanor.com

By: /s/ Charles W. Hanor
    Charles W. Hanor
    Texas Bar No. 08928800

ATTORNEYS FOR PLAINTIFF,
ROBERT V. WEST, III

Dated this 10th day of January, 2013.